IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARY WALL, )<br>    Petitioner, )<br> )<br>v. )<br> )<br>WARDEN JEFFREY KISER, )<br>    Respondent. ) | Civil Action No. 7:17-cv-00066<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Petitioner Gary Wall, a Virginia inmate proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging institutional disciplinary convictions he received while confined at Red Onion State Prison (Red Onion) on August 14, 2015. Wall was transferred to Wallens Ridge State Prison (Wallens Ridge) on August 17, 2015, and his charges were heard there. Wall complains of his loss of good conduct time and alleges due process violations in the disciplinary proceedings. This matter is before the court on respondent's amended motion to dismiss and Wall's response in opposition.[1] Having considered the record, the court will grant respondent's amended motion to dismiss.

I. BACKGROUND

On August 14, 2015, Wall was involved in an "altercation" at Red Onion, involving him, Officer Hicks, and Officer Rasnick. Both officers and Wall were injured.[2] Following the incident, Wall was charged with several disciplinary infractions. Two of these disciplinary infractions, one for aggravated assault on Officer Hicks and the other for aggravated assault on

---

[1] Respondent previously filed a motion to dismiss, arguing that the Wall's petition was procedurally barred. *See* Dkt. No. 23. On March 5, 2018, the court ruled that the matter was not procedurally barred and directed respondent to file an amended motion to dismiss addressing the merits of Wall's claims. *See* Dkt. No. 31.

[2] Officer Hicks needed three stitches on his face and suffered a fractured hand, which caused him to miss work for two weeks. Officer Rasnick suffered knee and eye injuries which had to be treated at the local hospital due to their "severity." (Mem. 2, 6, Dkt. No. 24-3, 90, 94.)

Officer Rasnick, resulted in the loss of good conduct time and are the subject of this habeas corpus proceeding. For each of the two charges, Wall was given notice of the charges in advance of his hearings. (Pet., Dkt. No. 1, 16; Disciplinary Offense Rep., Dkt. No. 1, 34, 56, 93-95.)

With regard to the charge concerning Officer Hicks, Wall requested an advisor, a witness, documentary evidence, and to appear at the hearing. Wall was assigned CIRC Pendleton as an advisor to assist at his hearing, and Lt. King served as Wall's advisor concerning his witnesses and documentary evidence. As a witness, Wall requested a control booth officer. The officer submitted a statement, indicating that he did not see the incident. Thereafter, Hearing Officer Hensley denied Wall's request for a witness after determining that the witness's statement was not relevant to the offense. As documentary evidence, Wall requested three rapid-eye security videos and Virginia Department of Corrections (VDOC) policy, memos, or directives governing inmate movement. The Hearing Officer denied his requests for the evidence after determining that the items requested were restricted for security reasons or were not relevant.[3]

A hearing was held on September 8, 2015. Wall was present, and Officer Hicks, the reporting officer, testified. At the hearing, Officer Hicks stated that when he arrived at the vestibule door, he ordered Wall to get on the wall. When Officer Hicks reached for Wall, Wall spun around and swung at Officer Hicks, but missed. Officer Hicks said that Wall would have "cleaned [his] clock" if the blow had connected. Officer Hicks grabbed Wall around the waist, and the two fell to the ground. Officer Hicks said that Officer Rasnick tried to gain control of Wall's feet in order to subdue him. Officer Hicks had Wall's left arm and was attempting to find

---

[3] On the Disciplinary Offense Report, the Hearing Officer checked the box indicating that the policies, memos, and directives were denied because they are restricted from inmates. Later, it was also determined that they were not relevant because the focus of the charge was what happened during the altercation, not the events leading up to it. (Memo. 4-5, Dkt. No. 24-3, 92-93.)

the right arm when Wall struck him in the eye. Wall stated that he and Officers Hicks and Rasnick were walking toward the vestibule door with Wall in front and the two officers behind him. When they arrived at the door, Wall turned around and Officer Rasnick came forward and grabbed Wall's arm and a scuffle ensued. Wall stated that Officer Rasnick swung at him, striking him on his left eye. Officer Hicks came in to assist Officer Rasnick. Wall testified that at no time did Officer Hicks ever tell him to present himself to be handcuffed. Wall also testified that while he and the two officers were on the floor, Wall rolled to his side to avoid the blows and collided with Officer Hicks. Wall stated that he did not attempt to throw, or actually throw, a punch at either officer. When the Hearing Officer asked Wall why Officer Rasnick assaulted him "out of the blue," Wall explained that Officer Rasnick was in an agitated state because they had been cursing at each other, back and forth. (Disciplinary Offense Rep., Dkt. No. 1, 56, 63; Witness Req., Dkt. No. 1, 60; Req. for Doc. Evid., Dkt. No. 1, 58-59; Memo., Dkt. No. 1, 67-73.)

During the hearing, Wall requested that the video footage be reviewed, and the Hearing Officer told Wall that he would need to "convince him" that it was necessary. Wall asked if the security camera would show if the blow that struck the officer in the face had been intentional or not, since he had been charged with aggravated assault. The Hearing Officer commented that neither Officer Hicks nor the video would be able to make that determination. However, the Hearing Officer asked Officer Hicks if he thought the blow was intentional, and Officer Hicks stated that he had been trying to restrain Wall and any activity from Wall would have been intentional, in his opinion. The Hearing Officer ultimately determined that the video was not necessary because Officer Hicks' injuries, an eye injury requiring three stitches and a fractured hand, were consistent with an assault upon an officer. Further, the reporting officer, Officer

3

Hicks, testified at the hearing, and Wall was given the opportunity to question him. (Memo., Dkt. No. 1, 67, 71-72.)

Hearing Officer Hensley found Officer Hicks' testimony more credible and, consequently, found Wall guilty of the charge. As a penalty, Wall lost 180 days of good conduct time. The conviction and penalty were reviewed and approved by Captain Tate on September 8, 2015. Wall received written notice of the Hearing Officer's determination, penalty, and reasoning on September 11, 2015. Wall appealed, and the Warden upheld the conviction and penalty. Wall further appealed, and the Regional Administrator also upheld the conviction and penalty. (Disciplinary Offense Rep., Dkt. No. 1, 63; Certification, Dkt. No. 24-3, 86; Memo., Dkt. No. 1, 66-73; Letter, Dkt. No. 1, 76-77.)

With regard to the charge concerning Officer Rasnick, Wall requested an advisor, documentary evidence, and to appear at the hearing.[4] Wall was assigned CIRC Rose as an advisor to assist at his hearing. As documentary evidence, Wall requested the rapid-eye security videos and interview statements of both officers from an interview with Captain Still. On August 18, 2015, a Hearing Officer denied Wall's requests on the basis that they were restricted from inmate access. (Disciplinary Offense Rep., Dkt. No. 1, 34; Req. Doc. Evid., Dkt. No. 1, 36-37.)

A hearing was held on August 25, 2015, where Wall was present and Captain Still, the reporting officer, testified.[5] Captain Still testified that he had reviewed the rapid-eye videos and saw Wall take a swing at Officer Rasnick when Officer Rasnick attempted to handcuff Wall.

---

[4] The court notes that Wall checked the box on the Disciplinary Offense Report indicating that he "wish[ed] to request a witness"; however, it appears he never submitted a Witness Request Form indicating which witness he would like and why.

[5] At the time of the hearing, Officer Rasnick was still out of work, recovering from his injuries incurred during the incident.

4

Officer Hicks then came to aid Officer Rasnick, and all three of them fell to the floor while Wall continued to fight the officers. Officer Rasnick sustained injuries to his knee and eye. Wall did not say much at the hearing because he "seemed concerned" about a "street charge" and that his testimony at the hearing might be used against him in the criminal case. During the hearing, Wall requested that the video footage be reviewed, and Hearing Officer Franks determined that it was not necessary because Captain Still had reviewed the videos and testified as to what the video showed, and Wall had the opportunity to question him. (Disciplinary Offense Rep., Dkt. No. 1, 38; Memo., Dkt. No. 1, 44-50.)

Ultimately, Hearing Officer Franks found Captain Still's testimony credible and, consequently, found Wall guilty of the charge. As a penalty, Wall lost 90 days of good conduct time. The conviction and penalty were reviewed and approved by Captain Cope on August 27, 2015. Wall received written notice of the Hearing Officer's determination, penalty, and reasoning on September 2, 2015. Wall appealed, and the Warden upheld the conviction and penalty. Wall further appealed, and the Regional Administrator also upheld the conviction and penalty. (Disciplinary Offense Rep., Dkt. No. 1, 38; Certification, Dkt. No. 24-3, 86; Memo., Dkt. No. 1, 43-50; Letter, Dkt. No. 1, 55.)

Wall filed the instant habeas petition on November 8, 2016. Wall alleges that: (1) he is actually innocent, in light of "newly-discovered reliable" evidence; (2) the disciplinary proceedings violated his due process rights because he was not allowed to present evidence or call witnesses; (3) the disciplinary proceedings violated his due process rights because the hearing officer was not impartial; (4) Wallens Ridge personnel did not have subject matter jurisdiction over his alleged violations that occurred at Red Onion; and (5) his due process rights

5

were violated when he was denied an advisor for two of his disciplinary hearings. (Pet., Dkt. No. 1, 5, 15.)

## II. DISCUSSION

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Federal habeas courts recognize a protected liberty interest in good conduct time earned, requiring "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. If a disciplinary proceeding subjects the inmate to loss of a constitutionally protected interest, such as earned good conduct time, the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).

*Wolff* "did not require either judicial review or a specified quantum of evidence to support the factfinder's decision." *Id.* at 454. "The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action." *Id.* A deprivation of an inmate's constitutionally protected interest "does not comport with "the minimum requirements of procedural due process . . . unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* In other words, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." *Id.* at 456. Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

**A. Evidence**

Wall alleges that he is actually innocent of his disciplinary convictions based on "newly-reliable" evidence. Wall claims that since his disciplinary hearings, during the course of a criminal proceeding in the Wise County Circuit Court, he has viewed the video footage of the incident. Wall alleges that the video shows that the injury to Officer Hicks' right eye was "caused by a head-on collision with his co-worker, and NOT by [Wall,] as alleged."[6] Wall submits a copy of a letter he sent to his criminal defense attorney, wherein he asks the attorney to provide an affidavit concerning the video footage. (Letter, Dkt. No. 1, 86.) He also submits the response from the attorney indicating that he was "unable to provide an Affidavit in regard to any video footage." (Letter, Dkt. No. 1, 88.) Wall also claims that he has discovered notes from an investigative interview of Officer Rasnick and an internal incident report of Officer Hicks,

---

[6] The video has not been submitted to the court in this case.

7

both of which Wall claims "contradict" the statements made on the Disciplinary Offense Reports. (Investigative Interview, Dkt. No. 1, 83-84; Internal Incident Rep., Dkt. No. 1, 85.)

Judicial review of prison disciplinary actions is limited solely to a determination as to whether there is evidence in the record to support the hearing officer's decision. *See Hill*, 472 U.S. at 457; *Baker v. Lyles*, 904 F.2d 925, 931-32 (4th Cir. 1990); *see also Kirillov v. Yancey*, No. 9:05-3251-HFF, 2006 U.S. Dist. LEXIS 101970, 2006 WL 2827373, at *8 (D.S.C. Sept. 28, 2006). The court "does not have the authority to weigh evidence or to judge the strength of any particular defense the petitioner may present." *Marin v. Bauknecht*, No. 8:07-0165-JFA-BHH, 2007 U.S. Dist. LEXIS 104228, 2007 WL 3377152, *4 (D.S.C. Nov. 9, 2007). A court must reject the evidentiary challenges to a prison disciplinary decision if there exists in the record "some evidence" to support the decision of the hearing examiner. *Hill*, 472 U.S. at 454; *Sinde v. Gerlinski*, 252 F. Supp. 2d 144, 150 (M.D. Pa. 2003). The court finds that there is some evidence to support each of Wall's disciplinary convictions. Moreover, a claim of actual innocence is not recognized in a habeas action relating to a disciplinary conviction. *See Rojas-Parra v. Warden, FCI-Bennettsville*, No. 1:13-1581-TMC, 2014 U.S. Dist. LEXIS 78224, 2014 WL 2548352, at *7 (D.S.C. June 6, 2014) ("To the extent Petitioner alleges he is entitled to relief based on a claim of actual innocence, a claim of actual innocence is not a basis for federal habeas corpus relief."); *Johnson v. Warden, FCI Williamsburg*, No. 1:13-3347-JFA-SVH, 2014 U.S. Dist. LEXIS 135426, 2014 WL 4825926, at *8 (D.S.C. Sept. 24, 2014) (same); *Bermea-Cepeda v. Atkinson*, No. 8: 11-cv-03170-JMC, 2013 U.S. Dist. LEXIS 92134, 2013 WL 3293594, at *8 (D.S.C. June 28, 2013) (same); *Gonzalez-Martinez v. Drew*, No. 8:11-00437-TMC-JDA, 2011 U.S. Dist. LEXIS 151351, 2011 WL 6982247, at *7 (D.S.C. Dec. 16, 2011) (same). Accordingly, the court grants defendants' amended motion to dismiss as to this claim.

## B. Witnesses and Documentary Evidence

Wall claims that the disciplinary proceedings violated his due process rights because he was not allowed to call witnesses or present evidence. It is well established that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits. . . . [by] refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. The Supreme Court expressly "stop[ped] short of imposing a more demanding rule with respect to witnesses and documents." *Id.* at 567.

The only witness that Wall requested was the control booth officer, and he only requested the officer as a witness in his case concerning Officer Hicks. The control booth officer submitted a statement that he did not see the incident based on where it occurred. The Hearing Officer, in his discretion as fact finder, ruled that the control booth officer's testimony was not relevant and, thus, excluded it. Live witness testimony may be disallowed by a hearing officer where the testimony would be irrelevant or cumulative. *Ward v. Johnson*, 690 F.2d 1098, 1112-13 (4th Cir. 1982).

With regard to "documentary evidence," Wall requested rapid-eye videos, investigative interview statements of both officers, and VDOC policy, memos, or directives governing inmate movement. For each of these pieces of evidence, the Hearing Officers, in their discretion as factfinders, denied Wall's requests because the evidence was restricted for security reasons and/or irrelevant. With regard to the rapid-eye videos, the Hearing Officers' denials of this evidence did not constitute a Due Process violation because this type of surveillance footage is "clearly outside the definition of 'documentary evidence' to which plaintiff is entitled." *Wallace v. Watford-Brown*, No. 1:13cv319 (TSE/IDD), 2015 U.S. Dist. LEXIS 136566, at *10, 2015 WL 5827622 (E.D. Va. Oct. 5, 2015). Further, a hearing officer may decide that legitimate

9

penological interests justify the denial of an individual inmate's documentary evidence request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration. *Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir.2004). Accordingly, Wall has not demonstrated a due process violation; therefore, the court will grants defendants' amended motion to dismiss as to this claim.

## C. Impartial Hearing Officer

Wall claims that the Hearing Officer on his charge concerning Officer Hicks was not impartial. Wall bases this complaint on the Hearing Officer's alleged question to Wall, inquiring whether Wall "expect[ed] him to believe two correctional officers would assault an offender for no reason . . . ." (Pet., Dkt. No. 1, 18.) An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. "[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Id.* at 592. "While a 'fair trial in a fair tribunal is a basic requirement of due process,' not all claims of bias rise to a constitutional level." *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "In order to prevail in a deprivation of due process claim, a defendant must show a level of bias that made 'fair judgment impossible.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "[B]ecause honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998)). Furthermore, "[d]ue process is violated only when 'the risk of unfairness is intolerably high' under the circumstances of a

10

particular case." *Gwinn*, 354 F.3d at 1220 (quoting *Withrow v. Larkin*, 421 U.S. 35, 58 (1975)). There is no evidence that the Hearing Officer in this case was involved in the investigation or prosecution of Wall's disciplinary charges. Further, Wall has not shown that the Hearing Officer's alleged question to Wall demonstrate that he lacked impartiality to the extent that fair judgment was impossible. Accordingly, the court will grant defendants' amended motion to dismiss as to this claim.

## D. Subject Matter Jurisdiction

Wall alleges that Wallens Ridge personnel did not have subject matter jurisdiction over Wall's disciplinary charges because the underlying conduct occurred at Red Onion. Inasmuch as both prisons are VDOC facilities which are governed by the same overarching policies and procedures, Wall has not demonstrated, and the court cannot find, a basis to justify this concept of subject matter jurisdiction as applied to institutional offenses committed within the VDOC. Accordingly, the court will grant defendants' amended motion to dismiss as to this claim.

## E. Advisor

Wall argues that his due process rights were violated when he was not provided an advisor to assist him during the hearings. It appears from the record that Wall was assigned an advisor to assist him at each of his hearings. However, there is no general constitutional right of an inmate to have a staff representative or advisor in prison disciplinary hearings. *See Hudson v. Hedgepath*, 92 F.3d 748, 751 (8th Cir. 1996); *Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009). Due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue[s] make it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570; *Hedgepath*, 92 F.3d at 751. In this case, there is no

11

evidence that Wall is illiterate or that the issues were so complex as to require a staff representative. Accordingly, even if Wall did not receive the services of an advisor at the hearings, this does not implicate federal due process, and, thus, the court grants defendants' amended motion to dismiss as to this claim.

### III.  CONCLUSION

For the reasons stated above, the court grants defendants' amended motion to dismiss, and an appropriate order will be entered.

Entered: March 31, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge